McFadden, Presiding Judge, dissenting.
I agree with Judge Bethel that the rule the majority adopts is one we should not adopt and are not required by statute to adopt. I write separately to respond to the majority's argument that, because the legislature did not include the good faith/probable cause rule in OCGA § 53-12-22 (b), we should infer that they rejected it.
That is plausible. But it is an inference drawn from silence. I would hold, at least as a general rule and absent statutory history to the contrary, that the one inference properly drawn from the legislature's silence on a question is that the legislature has not answered it.
The majority does not rely on statutory history. The legislature did not remove a good faith/probable cause rule from Georgia's Trust Code or Probate Code. Nor did it modify the in terrorem provisions in any meaningful way. Those Codes were silent as to the good faith/probable cause rule before the revisions referred to by the majority, and they remained silent as to that rule after those revisions. See former OCGA § 53-2-91 (predecessor to OCGA § 53-4-55 ); former OCGA § 53-2-107 (b) (predecessor to OCGA § 53-12-22 (b), effective until January 1, 1998); former OCGA § 53-4-68 (b) (predecessor *654 to OCGA § 53-12-22 (b), effective January 1, 1998).
Statutory history has been defined as "[t]he enacted lineage of a statute, including prior laws, amendments, codifications, and repeals." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 440 (2012). Scalia and Garner distinguish statutory history from legislative history, approving the former and opposing the latter. Id. at 256. The majority relies on the latter, drawing inferences about intent from silence.
I agree that we should inquire in appropriate cases about legislative intent. We are commanded to do so by statute. See OCGA § 1-3-1 (a) ; see also OCGA § 13-2-2 (rules of interpretation of contracts). There is merit to much of the criticism that has been leveled against legislative intent, particularly when the concept is allowed to devolve into attempted collective mind reading or is used as a cover for judicial policy making. See Scalia & Garner, Reading Law at 391-396. But that criticism does not justify a categorical rejection of the concept or disregard of the vast body of case law that has employed it.
Inquiry into legislative intent is at its most legitimate when the text of the statute remains firmly at the center of the analysis. The poet T.S. Eliot wrote, "Between the idea / And the reality / Between the motion / And the act / Falls the Shadow." Eliot, "The Hollow Men." Anyone who puts pen to paper or fingers to keyboard, whether to a craft a work of fiction or to articulate a consensus, must contend with the shadow. The legitimate objective of inquiry into legislative intent is illumination of ideas imperfectly expressed.
Here we do not have ideas imperfectly expressed-only silence.